TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
STEPHEN CHANG (Cal. Bar No. 312580)
Assistant United States Attorney
Riverside Office
    3403 Tenth Street, Suite 200
    Riverside, California 92501
    Telephone: (213)892-7280
    E-mail: stephen.chang@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 5:25-cr-00366-KK |
|---|---|
| Plaintiff, | GOVERNMENT'S MOTION FOR DESIGNATION OF MATERIAL WITNESSES WITH $5,000 APPEARANCE BOND WITH THIRD-PARTY AFFIDAVIT OF SURETY THEREON; MEMORANDUM OF POINTS AND AUTHORITIES; AFFIDAVIT OF ELISHA MEJIA |
| v. | |
| CARLOS JIMENEZ, | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorney STEPHEN CHANG, hereby moves this Court for an order to designate the following persons as material witnesses in the above-captioned case pursuant to Title 18, United States Code, Section 3144:

    1.    Chery Marcelo Lopez Rios

    2.    Ada Marling Martinez Morales

The government, moreover, moves that a $5,000 appearance bond with affidavit of surety from a responsible third party (with approval of the surety by Pre-trial Services), as well as Pre-trial

Services' supervision, be ordered as to these witnesses. Should the presence of these people not be secured by adequate bond, it will become impracticable to secure their presence at trial by subpoena.

This motion is based upon the attached memorandum of points and authorities, the attached affidavit of Elisha Mejia, the files and records of this case, and on such further evidence or argument as the Court may allow at the hearing on this motion.

Dated: February 24, 2026     Respectfully submitted,

TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division

_____/s/_____
STEPHEN CHANG
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

Title 18, United States Code, Section 3144, provides that where it appears by affidavit that "the testimony of a person is material in a criminal proceeding," and where it is "shown that it may become impracticable to secure the presence of the person by subpoena," the Court may order the arrest of the person and treat him or her in accordance with 18 U.S.C. § 3142.[1]

It is well settled that illegal aliens who are witnesses to a crime for which a defendant is charged can be held as material witnesses. See United States v. Verduzco-Macias, 463 F.2d 105, 107 (9th Cir. 1972) ("The material witness is treated like a person accused of a noncapital crime."). Furthermore, the government's failure to ensure the availability of an alien material witness may be held to be a denial of due process. See United States v. Tsutagawa, 500 F.2d 420, 423 (9th Cir. 1974). Also, as the Supreme Court held in United States v. Valenzuela-Bernal, 458 U.S. 858, 873 74 (1982), the deportation of a witness who could testify to matters material and favorable to the defense could subject the government to sanctions.

Accordingly, both statute and case law make it clear that when the government believes that the normal subpoena process will not secure the presence of a witness to a crime, it may apply to the court for conditions to be imposed on the release of that person, pursuant to 18 U.S.C. § 3142. Indeed, whether or not the government has requested bond, or otherwise provided economic inducement for the

---

[1] Section 3142 requires the Court to order that, pending trial, the person be either (1) released on personal recognizance, an unsecured appearance bond, a secured appearance bond, or (2) detained. 18 U.S.C. § 3142(a)(1)(4).

aliens to make themselves available at trial has been mentioned by some courts as a factor in determining whether or not the government acted in good faith under such circumstances. United States v. Seijo, 595 F.2d 116, 118 (2d Cir. 1979); United States v. Verduzco-Macias, 463 F.2d 105, 107 n.2 (9th Cir. 1972).

The attached affidavit sets forth sufficient facts to find that the testimony of the persons detained is material to the trial of this matter in that such testimony will establish that the persons witnessed events necessary to a prosecution of the case and any suppression issues that might be raised.

It is clear that unless the presence of these persons at trial is secured by adequate bond, it may well become impracticable to secure their presence by subpoena. In United States v. Hart, 546 F.2d 798, 800-01 (9th Cir. 1976), the Ninth Circuit held that the government was required to use "reasonable efforts" to produce at trial material witnesses, taking into account the history and attitude of such witnesses. The court noted that the detention of material witnesses has been found appropriate in those cases where "[e]very self-interest [of the witnesses] was on the side of their fleeing the jurisdiction." Id. at 800.

In the present case, the proposed material witnesses face the possibility of future deportation proceedings. In view of those proceedings, they may have reason to make themselves unavailable for trial in order to avoid deportation. Because the witnesses may desire to avoid the compulsory process of the court, these witnesses must be designated as material witnesses and an appropriate bond must be set in order to ensure their presence at trial.

In light of the above, the government moves this Court to declare that the above-named witnesses are material witnesses and to set bond on such witnesses as follows: (1) a $5,000 appearance bond secured by a third-party affidavit of surety without justification (with approval of the surety by Pre-trial Services); and (2) Pre-trial Services' supervision.  It is suggested that only by such an order can a failure and frustration of justice be prevented.

I, Elisha Mejia, being duly sworn, declare and state as follows:

## I. BACKGROUND OF AFFIANT

1. I am a Special Agent ("SA") with the Homeland Security Investigations ("HSI") division of U.S. Immigration and Customs Enforcement ("ICE") and have been so employed since 2008. I am currently assigned to the Child Exploitation Investigations Group at the HSI office in Corona, California. Since entering duty with HSI, I have conducted investigations involving Transnational Organized Crime, narcotics, money laundering, Intellectual Property Rights, national security, immigration, and child exploitation. Throughout my career, I have participated in numerous investigations and have conducted or assisted in the arrests of numerous subjects, conducted interviews with victims, witnesses, suspects, and informants. Through my training and experience, I have become familiar with methods used by people who commit offenses involving assault on federal officers.

## II. PURPOSE OF AFFIDAVIT

2. This affidavit is made in pursuant to 18 U.S.C. § 3144 and in support of the government's motion for designation and detention of material witnesses Chery Marcelo Lopez Rios and Ada Martinez Morales in connection with a criminal complaint against Carlos Jiminez ("JIMENEZ") for a violation of 18 U.S.C. § 111, Assault on a Federal Officer. This affidavit is submitted solely for the purpose of establishing that the testimony of the foregoing material witnesses is material in a criminal

proceeding and does not purport to set forth all my knowledge of, or investigation into, the offense.

### III. <u>PROBABLE CAUSE THAT AN OFFENSE WAS COMMITTED AND MATERIAL WITNESS INFORMATION</u>

3. Based on my discussions with witnesses, conversations with other law enforcement agents, review of law enforcement reports, and my own involvement in the investigation, I am aware of the following:

4. On October 30, 2025, an Immigration and Customs Enforcement, Enforcement and Removal Operations ("ERO") Deportation Officer and two U.S. Customs and Border Protection Office of Field Operations ("OFO") officers (collectively, the "Enforcement Team") were conducting a planned immigration enforcement operation in Ontario, California, within the Central District of California.

5. The Enforcement Team consisted of ERO Deportation Officer E.O, OFO Officer N.J., and OFO Officer S.C. Members of the Enforcement Team were clearly identifiable as federal officers, wearing vests and clothing marked with "CPB", "POLICE," "ERO," and/or "IMMIGRATION CUSTOMS ENFORCEMENT" insignia. They were also operating unmarked government owned vehicles outfitted with police equipment, including red and blue lights and sirens.

6. At approximately 6:29 a.m., the Enforcement Team conducted a vehicle stop of a Honda Accord (the "Honda"). The Honda was heading southbound on Vineyard Avenue when it was

stopped. The Honda was occupied by three individuals: the driver, Chery Marcelo Lopez Rios ("RIOS"); a front passenger, Ada Martinez Morales ("MORALES"); and a rear passenger, Jonathan Rocha Godinez. As part of the vehicle stop, Officer N.J. spoke with the occupants of the Honda at the driver's side window.

7. While Officer N.J. was speaking with the occupants of the Honda, an unrelated Lexus RX350 (the "Lexus") pulled next to Officer N.J. on the Honda's driver's side. The Lexus was driven by JIMENEZ. JIMENEZ engaged in a verbal altercation with the officers at the vehicle stop.

8. Officer E.O. approached the Lexus with his firearm in hand and told JIMENEZ to leave. Officer E.O. then holstered his firearm and retrieved his oleoresin capsicum spray (O.C. spray, or pepper spray).

9. After Officer E.O. had his pepper spray in hand, JIMENEZ pulled the Lexus forward to the left, away from the Enforcement Team and the Honda. The Lexus then stopped, turned its wheels, and then rapidly accelerated in reverse back toward Officer N.J. and the Honda.[1]

10. Because of JIMENEZ pulling forward, turning his wheels, and then rapidly accelerating back toward Officer N.J. and the Honda, Officer N.J. feared that the Lexus would hit officer N.J. and the Honda.

---

[1] At approximately this time, Officer E.O. fired a shot from his firearm and struck JIMENEZ in the shoulder. Then, JIMENEZ drove away from the scene and later checked himself into a hospital. After JIMENEZ was medically cleared and released from the hospital, JIMENEZ was taken into HSI custody.

11. RIOS and MORALES were interviewed after the incident. Based on his interview, RIOS is expected to testify as to his perception of JIMENEZ backing up the car very fast and that he believed JIMENEZ was going to "run over the officer who was there" by his car. RIOS also is expected to testify that he was fearful that JIMENEZ could have reversed into the Honda Accord.

12. Based on her interview, MORALES is expected to testify as to her perception of the high rate of speed of JIMENEZ's vehicle when it was reversing and her perception that the vehicle would have hit both an agent and the Honda Accord had it not stopped. MORALES is further expected to be able to testify to statements made by officers in the aftermath of the incident about protecting the passengers. Ms. Morales is also expected to testify that she and her fellow passengers remained fearful that JIMENEZ would return to cause further harm and that the officers moved the vehicles to provide further cover in case of a further incident.

13. Based on information obtained from interviews performed during the initial traffic stop of the Honda Accord, as well as from law enforcement databases, I am aware that MORALES and RIOS are citizens and nationals of Nicaragua. Neither is legally present in the country and both face potential future deportation proceedings.[2]

14. Based on the foregoing, I believe that there are sufficient facts to establish that material witnesses Chery

---

[2] On October 30, 2025, MORALES and RIOS were each granted deferred action for a six-month period which expires April 30,

Marcelo Lopez Rios and Ada Martinez Morales testimony is material in a criminal proceeding and that they should be designated as material witnesses pursuant to 18 U.S.C. § 3144.

/s/
_____
Elisha Mejia, Special Agent
Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this ____ day of February 2026.

_____
HONORABLE KENLY KIYA KATO
UNITED STATES DISTRICT JUDGE

---

2026. In that letter, both were informed that "Deferred Action does not provide you any legal immigration status in the United States, rather it is an administrative convenience to the government," that such deferral "does not operate to cure any defect in status under the INA" and that "if conditions change," they could be placed "into removal proceedings before an immigration judge."