CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
CHAD PENNINGTON (Bar No. 354831)
(EMail: Chad_Pennington@fd.org)
AYAH A. SARSOUR (Bar No. 340280)
(EMail: Ayah_Sarsour@fd.org)
Deputy Federal Public Defender
3801 University Avenue, Suite 700
Riverside, California 92501
Telephone: (951) 276-6346
Facsimile: (951) 276-6368
Attorneys for Defendant
CARLOS JIMENEZ

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 5:25-cr-00366-KK |
| Plaintiff, | |
| v. | **MOTION TO COMPEL GOVERNMENT WITNESS PERSONNEL FILES AND COMMUNICATION** |
| CARLOS JIMENEZ, | Status Conference: June 4, 2026, at 1:30 p.m. |
| Defendant. | Trial Date: June 22, 2026, at 8:30 a.m. |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...............................................................................2

II. PROCEDURAL POSTURE AND UNCONTESTED FACTS ...................6

    A.    Defense requested *Brady* and *Henthorn* materials. .....................6

    B.    Defense requested all communications by any officer, agent, or other government official, relating to this incident.................8

    C.    Defense requested all agency policies and directives relevant to this incident. ...................................................................10

III. ARGUMENT.................................................................................11

    A.    The Court should compel all Rule 16, *Brady*, and *Henthorn* materials. ...................................................................11

    B.    The Court should compel any and all communications and digital evidence by any officer, agent, or other government official, relating to this incident. ..............................................12

    C.    The Court should compel all written agency policies and directives relevant to this incident..............................................16

IV. CONCLUSION...............................................................................18

i

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Brady v. Maryland,*
373 U.S. 83 (1963)................................................................................*passim*

*Giglio v. United States,*
405 U.S. 150 (1972)...................................................................................6

*Kyles v. Whitley,*
514 U.S. 419, 432 (1995).........................................................................13

*Milke v. Ryan,*
711 F.3d 998 (9th Cir. 2013)...................................................................12

*United States v. Bagley,*
473 U.S. 667 (1985).................................................................................11

*United States v. Briggs,*
25-cr-609 (N.D. Ill. 2025).......................................................................16

*United States v. Bruce,*
984 F.3d 884 (9th Cir. 2021)...................................................................12

*United States v. Budziak,*
697 F.3d 1105 (9th Cir 2012)..................................................................11

*United States v. Bundy,*
968 F.3d 1019 (9th Cir. 2020).................................................................13

*United States v. Cadet,*
727 F.2d 1453 (9th Cir. 1984).................................................................12

*United States v. Cedano-Arellano,*
332 F.3d 568 (9th Cir. 2003)...................................................................17

*United States v. Henthorn,*
931 F.2d 29 (9th Cir. 1990)...............................................................*passim*

*United States v. Hernandez-Meza,*
720 F.3d 760 (9th Cir. 2013)...................................................................11

*United States v. Lloyd,*
992 F.2d 348 (D.C. Cir. 1993).................................................................11

*United States v. Martinez,*
1:25-cr-636 (N.D. Ill. Nov. 5, 2025).......................................................15

*United States v. Muniz-Jaquez,*
718 F.3d 1180 (9th Cir. 2013)............................................................11, 18

*United States v. Olano,*
62 F.3d 1180.............................................................................................11

*United States v. Price,*
566 F.3d 900 (9th Cir. 2009)...................................................................13

ii

*United States v. Quintanilla-Chavez,*
5:25-cr-388, (W.D. Tex. 2025) ........................................................................ 16

*United States v. Reid,*
25-cr-244 SLS, (D.D.C. 2025) ........................................................................ 16

*United States v. Span,*
75 F.3d 1383 (9th Cir. 1996) ......................................................................... 17

*United States. v. Sudikoff,*
36 F. Supp. 2d 1196 (C.D. Cal. 1999) ......................................................... 12

*Youngblood v. West Virginia,*
547 U.S. 867 (2006) ........................................................................................ 13

**Federal Statutes**

18 U.S.C. § 111 ................................................................................... *passim*

**Federal Rules**

Fed. R. Evid. 608(b) ............................................................................... 7

Fed. R. Crim. P. 5(f) .............................................................................. 1

Fed. R. Crim. P. 16 ..................................................................... *passim*

**Constitution**

Const. amend. V ................................................................................... 11

iii

Defendant Carlos Jimenez, by and through counsel of record, Deputy Federal Public Defenders, Ayah Sarsour and Chad Pennington, hereby moves to compel the government's disclosure of personnel records for the immigration officers and agents involved in this matter, the exchanged communications between the immigration enforcement officers and agents regarding the charged offense, and all policies and directives relevant to this incident. Mr. Jimenez moves for relief under Federal Rules of Criminal Procedure 16 and 5(f), this Court's standing criminal order, and *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny.

Mr. Jimenez asks that the Court order the government's production of the requested material or a government response within seven days. If the Court is amenable, Mr. Jimenez seeks a hearing on the matter at the Court's earliest convenience given the impending trial date.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  April 10, 2026          By  /s/ *Ayah Sarsour*

AYAH A. SARSOUR
CHAD PENNINGTON
Deputy Federal Public Defender

1

## I. INTRODUCTION

This case is yet another matter stemming from an aggressive ICE traffic stop and interaction with the public that resulted in catastrophic consequences and the subsequent filing of an unsupportable criminal charge. Indeed, this case fits a recent and endemic national pattern of ICE using aggressive traffic stop techniques and then employing the improper use of near-lethal force against an American citizen.

On October 31, 2025, the government initiated this case by filing a criminal complaint charging Carlos Jimenez with assault on a federal officer in violation of 18 U.S.C. § 111. *See United States v. Jimenez*, No. 5:25-mj-00674, Criminal Complaint, ECF No. 1 (C.D. Cal. Oct. 31, 2025). On November 18, 2025, a federal grand jury returned a one-count indictment charging Mr. Jimenez with assault on a federal officer using a deadly or dangerous weapon, in violation of 18 U.S.C. § 111(a)(1) and (b). *See United States v. Jimenez*, No. 5:25-cr-00366-KK, Indictment, ECF No. 15 (C.D. Cal. Nov. 18, 2025). During the alleged traffic stop incident, ICE officer Eusebio Ortiz shot at, and struck Mr. Jimenez in the shoulder as Mr. Jimenez was driving away from immigration enforcement. Mr. Jimenez was not the object of the traffic stop. The errantly discharged firearm round nearly killed Mr. Jimenez. All immigration officers involved in the incident at issue were interviewed by the government on October 30, 2025, the same day of the incident, *except* immigration officer Ortiz, the shooter of Mr. Jimenez. Ortiz was not interviewed until over a month later. The government's interviews of the immigration officers were uniformly audio recorded, *except* for immigration officer Ortiz's post-incident interview. To state differently, only the shooter here, immigration officer Ortiz was not interviewed until over a month after the incident, and only his interview was not recorded. Trial is scheduled for June 22, 2026, the pretrial conference for June 4, 2026.

Starting on November 5, 2025, the defense has made repeated requests for discovery in this case. Those demands have included personnel files and the text message exchanges between the involved immigration officers. Despite its demands, the defense has not received *Henthorn* material. Only recently has the government provided incomplete written/text communications exchanged between the immigration officers related to the charged incident.   Although the government has produced some text messages related to the incident, their initial production points to additional text messages that were not produced. Additionally, the government, without additional investigation, claims that immigration officer Ortiz does not possess any written communications, including text messages, related to the incident. However, that cannot be. It cannot be that other involved immigration officers have responsive communications, including text messages, but the shooter, immigration officer Ortiz, has none. To accept the government's incredulous position would mean immigration officer Ortiz did not send a single text message to a colleague after he shot Mr. Jimenez. That simply cannot be true. In this case, the shooter, unlike all other immigration officers at issue, was interviewed over a month later, without an audio recording, and without responsive communications. Accordingly, Mr. Jimenez[1] respectfully moves this Court to compel the following:

> (1) the personnel files of all officers or agents involved in this case and anticipated to testify, pursuant to *United States v.*

---

[1] All requests concerning Mr. Carlos Jimenez include, but are not limited to, any and all variations, misspellings, aliases, nicknames, or code names associated with his identity. This request further encompasses any reference to Mr. Jimenez, whether by name or otherwise, including references made in connection with the underlying incident or event.

*Henthorn*, 931 F.2d 29 (9th Cir. 1990), which requires, upon request, that the government inspect the personnel files of its law enforcement officer witnesses and turn over impeachment material;

(2) all communications, including but not limited to text messages and emails, by any officer, agent, or other government official, relating to this incident. The government has produced a small amount of discovery responsive to this request, but it has failed to produce the entirety of the responsive discovery and, notably, failed to produce immigration officer Ortiz's text messages;

(3) Any written group communications (including text messages and similar communications), operations directives, or disseminated memoranda regarding HSI/CBP/ICE/ERO operations in the City of Ontario and in San Bernardino County on October 28, 2025, through November 5, 2025;

(4) Information regarding any oral directives disseminated regarding HSI/CBP/ICE/ERO operations in the City of Ontario and in San Bernardino County on October 28, 2025, through November 5, 2025;

(5) A copy of the current HSI/CBP/ICE/ERO employee manual(s) to include any manuals regarding the following topics: use of force, and effecting warrants and arrests;

(6) All discovery pertaining to the HSI/CBP/ICE/ERO policies regarding the use of government vehicles in arrest matters and effectuating arrests;

(7) All written and oral communications between the San Bernardino Sheriff's Department and any responding Ontario

4

City Police Officers and HSI/CBP/ICE/ERO in advance, during, and after Mr. Carlos Jimenez October 30, 2025, arrest.

(8) All interagency emails, correspondence, communications, reports, or memoranda relating to Mr. Carlos [Jimenez] or the incident regarding Mr. Carlos [Jimenez];

(9) A list of all HSI, ERO, and USCBP agents involved in the investigation;

(10) All communications conducted on both government and personal phones in the possession by all agents involved in the investigation related to the incident;

(11) Any and all correspondence related to the absence or non-existence of Officer Ortiz's communications related to the incident;

(12) The steps the government took or plans to take to confirm that Officer Ortiz does not have any communications related to the incident;

(13) The steps the government took to preserve any and all communications between all involved officers, agents, or witnesses in the case;

(14) All metadata for both the government and personal phones for all agents involved in the investigation;

(15) The steps the government took to preserve all correspondence and related metadata; and

(16) Any information regarding the lack of recording of Officer Ortiz's post-incident interview.

Mr. Jimenez respectfully requests that the Court order the government to produce the discovery materials requested in the present motion or provide

5

a certificate of non-existence and explain the destruction and/or non-existence of the requested materials and/or useful evidence.

## II. PROCEDURAL POSTURE AND UNCONTESTED FACTS

Mr. Jimenez is charged with committing assault on immigration officer N.J. on October 30, 2025, with a dangerous weapon under under 18 U.S.C. §§ 111(a)(1) and (b), a felony. Mr. Jimenez denies the government's allegations and maintains his innocence.

The alleged assault stems from an ICE traffic stop of third parties and Mr. Jimenez's presence near the traffic stop. During the incident, an immigration officer shot Mr. Jimenez in the shoulder. Following the incident, and on that same day, all HSI and USCBP involved personnel were interviewed, and the interviews were audio recorded. However, immigration officer Ortiz was not interviewed until December 2, 2025, over a month following the incident. Unlike the other officers involved, immigration officer Ortiz's interview was not recorded.[2] *See* FBI Interview of Ortiz.

## A.   Defense requested *Brady* and *Henthorn* materials.

On November 5, 2025, the undersigned defense counsel made an initial discovery request. *See* Exhibit A, Discovery Request. That request included:

> "[All] discovery pursuant to all court rules, codes, statutes, and
> case law, including Federal Rules of Criminal Procedure 12, 16,
> and 26, *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United*
> *States*, 405 U.S. 150 (1972), and the Jencks Act (18 U.S.C. § 3500).
> [And all] [p]ersonnel files of all government agents and employees

---

[2] The date of entry on the corresponding FBI 302 is 12/02/2025. However, exact date of the interview is unclear as different dates are listed on the continuation pages (*e.g.* 11/14/2025 and 11/21/2025). *See* FBI Interview of Officer Ortiz.

whom the government intends to rely on for testimony at a hearing or a trial. *United States v. Henthorn*, 931 F.2d 29, 30-31 (9th Cir. 1991); *see also* Fed. R. Evid. 608(b). This request specifically covers any *Henthorn* material in the agents or employees' prior employment, if any. Further, [defense asked that the government] personally review all such personnel files for discoverable *Brady* materials.

Exhibit A, First Discovery Request, at 1, 4.

On December 12, 2025, the Court issued its standing order for this criminal case. *See* Exhibit G, ECF No. 24. The Court's criminal standing order directed the government to "produce to the defendant in a timely manner all information or evidence known to the government" that falls within the scope of *Brady*. Exhibit G at 2.

Again, on November 20, 2025 and March 26, 2026, defense counsel requested the personnel files of all immigration officers or agents involved in this case and anticipated to testify, citing *Henthorn*, which requires, upon request, that the government inspect the personnel files of its law enforcement officer witnesses and turn over impeachment material. *See* Exhibit A, First Discovery Request; Exhibit C, Third Discovery Request; and Exhibit E, Fifth Discovery Demand Email.

The government, when asked its position on this motion, stated that the government would comply with its discovery obligations generally and would produce *Henthorn* in advance of the June pretrial conference date once it finalizes its witness list.  At the time of this motion, has not received any discovery responsive to this request.  Thus, the defense now moves this Court to compel production of *Henthorn* material of any agent or law enforcement officer involved in this incident no later than 7-days so the defense can timely prepare for trial.

**B.    Defense requested all communications by any officer, agent, or other government official, relating to this incident.**

On October 30, 2025, at 5:06 p.m., hours after the alleged incident, Officer N.J., the alleged victim, was interviewed telephonically by HSI Special Agents.  During the interview, the Special Agents directed Officer N.J. to save "*any text messages you have with your partners about any of this [referring the alleged incident].*" *See* Exhibit H (emphasis added), Audio interview of N.J. at 24:27. N.J. acknowledged her understanding of the Special Agents' text message preservation directive.

On December 2, 2025, February 18, 2026, March 6, 2026, and March 26, 2026, defense counsel again requested the officers' and agents phones be made available for inspection and for disclosure of any and "[a]ll communications by any officer, agent, or other government official, relating to this incident." *See* Exhibit D, Fourth Discovery Request; Exhibit E, Fifth Discovery Demand emails; and Exhibit F, Sixth Discovery Demand Email.

Specifically, the defense, in part, requested the following: 1) All communications, including but not limited to text messages and emails, by any officer, agent, or other government official, relating to this incident; 2) Any written group communications (including text messages and similar communications), operations directives, or disseminated memoranda regarding HSI/CBP/ICE/ERO operations in the City of Ontario and in San Bernardino County on October 28, 2025 through November 5, 2025; and 3) Information regarding any oral directives disseminated regarding HSI/CBP/ICE/ERO operations in the City of Ontario and in San Bernardino County on October 28, 2025, through November 5, 2025. *See* Exhibit D, Fourth Discovery Request.

8

On March 6, 2026, the government denied production of the immigration officers' cell phones for inspection and did not respond to the remainder of the defense's request. *See* Exhibit E, Fifth Discovery Demand emails. Only after the defense demanded the communications again, on April 6, 2026, did the government produce messages from immigration officers Mejia, Cosey, and N.J.'s phones. However, the government inexplicably represented that immigration officer Ortiz did not have responsive messages. *See* Exhibit I, Seventh Discovery Demand Emails. These initial text messages reveal that there are additional communications yet to be produced (*e.g.* N.J.'s communications with FBI Special Agent Banuelos). In response to the limited production, the defense requested from the government and now moves this Court to compel the following items:

1. All interagency emails, correspondence, communications, reports, or memoranda relating to Mr. Carlos [Jimenez] or the incident regarding Mr. Carlos [Jimenez];

2. A list of all HSI, ERO, and USCBP agents involved in the investigation (*e.g.* USAO_752 re: FBI agents);

3. All communications conducted on both government and personal phones in the possession by all agents involved in the investigation;

4. Any and all correspondence related to the absence or non-existence of Officer Ortiz's communications related to the incident;

5. The steps the government took or plans to take to confirm that Officer Ortiz does not have any communications related to the incident;

9

6. The steps the government took to preserve any and all communications between all involved officers, agents, or witnesses in the case;

7. All metadata for both the government and personal phones for all agents involved in the investigation;

8. The steps the government took to preserve all correspondence and related metadata; and

9. Any information regarding the lack of recording of Officer Ortiz's interview.

## C. Defense requested all agency policies and directives relevant to this incident.

Specifically, the defense, in part, requested the following:

1) A copy of the current HSI/CBP/ICE/ERO employee manual(s) to include any manuals regarding the following topics: use of force, and effecting warrants and arrests; 2) All discovery pertaining to the HSI/CBP/ICE/ERO policies regarding the use of government vehicles in arrest matters and effectuating arrests; and 3) All written and oral communications between the San Bernardino Sheriff's Department and any responding Ontario City Police Officers and HSI/CBP/ICE/ERO in advance, during, and after Mr. Carlos Jimenez October 30, 2025, arrest.

Exhibit D, Fourth Discovery Request.

At the time of this Motion, defense counsel, has not received any discovery responsive to this request.  Thus, the defense now moves the Court to compel production of this relevant material.

10

### III. ARGUMENT

**A.    The Court should compel all Rule 16, *Brady*, and *Henthorn* materials.**

Federal Rule of Criminal Procedure 16 requires, upon a defendant's request, that the government provide the defense with all material in the government's possession, custody, or control if the item is material to preparing the defense. *See* Fed. Rule Crim. P. 16(a)(1)(E)(i). Evidence is material if it is helpful to the development of a possible defense. *See United States v. Budziak*, 697 F.3d 1105, 1111 (9th Cir 2012); *United States v. Olano*, 62 F.3d 1180, 1230. "Materiality" in the Rule 16 pretrial context is broader than the *Brady* "materiality" standard at trial because "[i]nformation that is not exculpatory or impeaching may still be relevant to developing a possible defense." *United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013). Indeed, the Ninth Circuit has held that Rule 16 "materiality" is a "low threshold; it is satisfied so long as the information . . . would have helped" to prepare a defense. *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013) (citation and internal quotation marks omitted); *see also United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) ("[t]his materiality standard normally is not a heavy burden; rather, evidence is material as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.").

Separate from Rule 16, the government may not suppress impeachment evidence under the Fifth Amendment, Due Process Clause because it is categorically exculpatory. *See generally Brady*, 373 U.S. 83 . There can be no dispute that any acts of misconduct or material in a personnel file that bears on credibility can be used as impeachment evidence. *See United States v. Bagley*, 473 U.S. 667, 676 (1985). Furthermore, the Ninth

Circuit has held that, with respect to *Brady* evidence, the defendant does not have to make an initial showing of materiality in order to access such information. *United States v. Cadet*, 727 F.2d 1453 (9th Cir. 1984). Thus, if any of the personnel files for law enforcement witnesses in this case contain acts of misconduct or material that bears on credibility, the Constitution and Rule 16 require that those materials be produced. The duty to disclose favorable evidence includes "[a]ny evidence that would tend to call the government's case into doubt," whether by rebutting an element of the offense or by impeaching a witness. *Milke v. Ryan*, 711 F.3d 998, 1012 (9th Cir. 2013). Evidence of misconduct by a government agent involved in the investigation falls under *Brady*, whether or not the government ultimately calls that agent as a witness. *United States v. Bruce*, 984 F.3d 884, 898 (9th Cir. 2021). Thus, the defense is requested production of all *Henthorn* material related to *any* agent of law enforcement officer involved in this incident.

Here, the requested personnel records are material under Rule 16 since they relate to credibility, and thus impeachability, of the officers or agents in this case. *United States. v. Sudikoff*, 36 F. Supp. 2d 1196, 1199-1200 (C.D. Cal. 1999). That credibility is relevant to the defense's trial strategy, and preparation of the defense's trial theory. Accordingly, the personnel documents should be produced by the government.

**B.    The Court should compel any and all communications and digital evidence by any officer, agent, or other government official, relating to this incident.**

Under *Brady,* and its progeny, due process requires the government to "disclose all evidence relating to guilt or punishment which might reasonably be considered favorable to the defendant's case, even if the evidence is not admissible so long as it is reasonably likely to lead to admissible evidence."

*United States v. Price*, 566 F.3d 900 n.14 (9th Cir. 1993) (*internal citation omitted).* This duty is rooted in "longstanding principles of constitutional due process." *Id.* Prosecutors should freely disclose such evidence pretrial "without attempting to predict whether its disclosure might affect the outcome of the trial." *United States v. Bundy*, 968 F.3d 1019, 1033 (9th Cir. 2020).

*Brady* obligations extend beyond materials known to the prosecutors: "The prosecution has an affirmative obligation to learn of potentially favorable evidence and provide it to the defense."[3] *Id.* at 1038. This duty extends to favorable evidence in the possession of local law enforcement involved in the investigation. *See Price*, 566 F.3d at 909 ("[E]xculpatory evidence cannot be kept out of the hands of the defense just because the prosecutor does not have it, where an investigating agency does."); *see also Youngblood v. West Virginia*, 547 U.S. 867 (2006). Because the prosecution is uniquely positioned to obtain information known to other agents of the government, "*it may not be excused from disclosing what it does not know but could have learned." Id.* (quotations omitted); *see also Kyles v. Whitley*, 514 U.S. 419, 432, 438 (1995) (the government has an affirmative duty to learn of favorable evidence known to the agents' working on the government's behalf.).

The government has so far declined to comply with these obligations. Indeed, the government has refused to say whether it has done *anything* to satisfy its obligation to learn of favorable evidence [regarding immigration

---

[3] Because it is a constitutional obligation, *Brady* evidence must be disclosed regardless of whether the defendant makes a request for exculpatory or impeachment evidence. *Kyles v. Whitley*, 514 U.S. 419, 432 (1995).

13

officer Ortiz] and provide it to the defense. *See Bundy*, 968 F.3d at 1038. The government's stonewalling has made it impossible for the defense to know whether the government has uncovered additional communications, or whether it believes that information does not fall under *Brady*; whether the government has searched but found no communications in immigration officer Ortiz's possession; or whether the government has refused to look into whether immigration officer Ortiz's claims are true. It strains credulity to believe that immigration officer Ortiz has zero text messages related to this incident. Not only did his partner officers have communications, but he is the only one who shot and almost killed Mr. Jimenez, thus his credibility is at issue. It is telling that, unlike all other officers involved in this incident, immigration officer Ortiz was not interviewed until over a month after the incident, and the interview was not recorded. The government's stance leaves Mr. Jimenez in the dark regarding any favorable evidence that an investigation may uncover. Thus, the only acceptable remedy is to require the government to conduct reasonable inquiries of immigration officer Ortiz for any such information and provide it to the defense within seven days.

The communications between all agents and law enforcement officers is especially important considering none of the officers involved had body warn or dash cameras that captured their -- let alone any -- account of the offense. Indeed, the Special Agents advised N.J. to preserve all text messages. Thus, it further strains credulity that N.J. *has no responsive* messages exchanged with Ortiz. Moreover, it would be inconsistent that N.J. was instructed to preserve her text messages, but Ortiz, the shooter, was not. The only evidence of the alleged assault is their statements and the government must produce the entirety of the communications. These materials are discoverable under Rule 16 and must be preserved under *Youngblood* because many forms of digital communication are at risk of

alteration or deletion.[4] Indeed, a district court has already ordered production of similar messages.[5] Furthermore, that the government has

_____

[4] If Officer Ortiz maintains that he does not have any communications related to this incident, the Court should compel the metadata of both his government-issued phone and personal phone to test the veracity of his statements.

[5] *United States v. Martinez*, 1:25-cr-636, ECF Nos. 63 (N.D. Ill. Nov. 5, 2025) (the district court ordering the production of all immigration agents' text messages for *in camera* inspection). *See id.*, ECF No. 65 (ordering additional production of immigration agent text messages directly to the defense "promptly."). Notably, *Martinez*, like here, also dealt with an ICE shooting of the alleged defendant. Like here, the government claimed in *Martinez*, that the defendant attempted to ram Border Patrol agents with her car. *Martinez* and this case are two of a veritable explosion of criminal matters charged nationally stemming from ICE traffic stops and alleged assaults under § 111. In *Martinez*, the district court granted the *government's* dismissal motion with prejudice three days after it had ordered the government to produce the second tranche of text messages. *See id.*, ECF No. 70.

In addition, similar cases have been dismissed by district courts based on subsequent discovery productions or defense investigations revealing the government's narrative that either its vehicles or the immigration officers would be struck or harmed by the defendant's vehicles to be false. To that end, the explosion of § 111 cases nationally has been engendered by the government's more recent change in enforcement tactics. Thus, any change

already produced some messages demonstrates that it too understands that production is necessary and the withholding of messages by immigration officer Ortiz and the other messages is not proper.

## C.    The Court should compel all written agency policies and directives relevant to this incident.

The government's refusal to produce agency policies and directives, to include the use of force materials, to the defense is a violation of its discovery obligations under Rule 16. The government cannot justify its withholding of these materials.

---

in policy is a relevant matter for discovery disclosure here. *See e.g.*, *United States v. Reid*, 25-cr-244 SLS, ECF No. 70 (D.D.C. 2025) (case dismissed after the government initially claimed defendant assaulted an FBI agent and an ICE agent, however, video footage showed the ICE agent made first contact); *United States v. Quintanilla-Chavez*, 5:25-cr-388, ECF No. 64 at 6 (W.D. Tex. 2025) (dismissing the complaint of a § 111(a) matter based on the sworn affidavit telling a "largely fictional—story" of the assault, including claiming, falsely, that the defendant "fought the law enforcement officers."); *United States v. Briggs*, 25-cr-609, ECF No. 43 at 6 (N.D. Ill. 2025) (emphasis added) (the district court granted the government's dismissal motion noting "the extraordinary judicial determinations that DHS sworn declarations are unreliable, that the candor of its agents is open to question, and that sworn testimony of its CBP chief *contained knowing falsehoods.")*. The government's agents' candor and truthfulness in these recent cases cannot be taken at face value and the cases evince an inordinate amount of officer and agent distortions and acts of blatant dishonesty.

16

First, the materials are relevant to the defense's theory that the involved officers used excessive force, and Mr. Jimenez acted appropriately. The government should have produced these materials at the outset of this case because they are relevant to the defense's assessment of its defense, including a determination that immigration officer Ortiz acted with excessive force. *See, e.g., Hernandez Meza*, 720 F.3d at 768 (internal citation omitted) ("Information is material even if it simply causes a defendant to completely abandon' a planned defense and take an entirely different path."). Indeed, the government's discovery, and the bullet that remains lodged in Mr. Jimenez's shoulder, show that immigration officer Ortiz may have used excessive force during the incident.

An excessive force determination is relevant to the elements of a section 111 charge. *See United States v. Span*, 75 F.3d 1383, 1389 (9th Cir. 1996). The second element of a section 111 charge is that the government must prove beyond a reasonable doubt that Mr. Jimenez "forcibly assaulted" Officer N.J. while she "was engaged in, or on account of, [her] official duties." Ninth Cir. Crim. Model Jury Instr. No. 8.1. The Ninth Circuit is clear that, for the second "element of the [section 111] offense [,] excessive use of force in the pursuit of official duty is not considered a good faith performance of official duties within the definition of section 111." *Span*, 75 F.3d at 1389 (emphasis added). Thus, the government must prove that the officers were not using excessive force against him to prove its case, and any materials relating to the use of force are clearly discoverable.

Courts regularly agree that materials relating to an officer's training and other guidelines are discoverable by the defense. For example, in *United States v. Cedano-Arellano*, the defendant, who was charged with cocaine smuggling, requested the training records for the narcotics detector dog that "alerted" on his vehicle. 332 F.3d 568 (9th Cir. 2003). There, the Ninth Circuit

found that such materials were discoverable under Rule 16(a)(1)(E), and agreed that the requested materials were "crucial to [the defendant's] ability to assess the dog's reliability . . . and to conduct an effective cross-examination of the dog's handler." *Id.* at 571; *see also Muniz-Jaquez*, 718 F.3d at 1184 (holding officer dispatch tapes were material to the defendant's defense under Rule 16(a)(1)(E) because the defense could have used the tapes to assess the testifying officer's reliability, and to cross-examine him effectively).

Finally, the use of force materials is relevant to assessing the involved officers' bias and credibility. The materials will inform the defense about whether officers engaged in excessive force against Mr. Jimenez both before and immediately after he allegedly "assaulted" N.J. and thus created incentive to lie about their actions. Certainly, if the officers were mistaken about what occurred, and then used excessive force in response, they would be incentivized to create an assault to justify the excessive response. Because the involved officers' words will form the basis of the government's case, Mr. Jimenez must be allowed to challenge their credibility, including with evidence establishing they engaged in excessive force and have a motive to lie to justify their unlawful actions. In sum, all materials, including but not limited to manuals, guidelines, memorandum, and other communications, addressing their policies to include the use of force or excessive use of force are relevant to Mr. Jimenez's defenses.

## IV. CONCLUSION

For the foregoing reasons, Mr. Jimenez requests that the Court compel the government to disclose any impeachment material to the defense, produce directly any and all law enforcement communications related to this incident, and produce directly all agency policies and directives relevant to the incident.

18

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  April 10, 2026          By  /s/ *Ayah Sarsour*

AYAH SARSOUR
CHAD PENNINGTON
Deputy Federal Public Defenders

19

## CERTIFICATE OF COMPLIANCE AND DECLARATION

I, Ayah Sarsour, counsel of record for the defendant, certify that this filing complies with the requirements of L.R. 11-6.1, including word count. I further certify under penalty of perjury that the representations in this filing are true and accurate.