TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
STEPHEN CHANG (Cal. Bar No. 312580)
MARK K. KANOW (Cal. Bar No. 323681)
Assistant United States Attorneys
Riverside Office
     3403 Tenth Street, Suite 200
     Riverside, California 92501
     Telephone:   (415)894-7280
     E-mail:      stephen.chang@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>             v.<br><br>CARLOS JIMENEZ,<br><br>             Defendant. | No. 5:25-cr-00366-KK<br><br>GOVERNMENT'S OPPOSITION TO MOTION TO COMPEL; DECLARATION OF ELISHA MEJIA; DECLARATION OF ESTEVAN BANUELOS |

Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorneys Stephen Chang and Mark Kanow, hereby submit this Opposition to Defendant's Motion to Compel (Dkt. No. 53.)

//

//

//

This Opposition is based upon the attached memorandum of points and authorities, the attached declaration of HSI Special Agent Elisha Mejia, the declaration of FBI Special Agent Estevan Banuelos, the files and records of this case, and any other argument or evidence that the Court may consider.

Dated: April 16, 2026                Respectfully submitted,

                                     TODD BLANCHE
                                     Acting Attorney General
                                     BILAL A. ESSAYLI
                                     First Assistant United States
                                     Attorney

                                     ALEXANDER B. SCHWAB
                                     Assistant United States Attorney
                                     Acting Chief, Criminal Division


                                          /s/
                                     STEPHEN CHANG
                                     MARK K. KANOW
                                     Assistant United States Attorney

                                     Attorneys for Plaintiff
                                     UNITED STATES OF AMERICA

2

**TABLE OF CONTENTS**

I.    INTRODUCTION AND BACKGROUND...................................1

II.   LEGAL STANDARD..............................................2

III.  ARGUMENT....................................................3

    A.    This Motion is Premature And Could and Should Have
        Been Resolved Through the Meet-and-Confer Process.........3

    B.    Defendant's Requests are  Moot, Premature, or Improper....4

        1.    Request 1: The Government will Make its Henthorn
            Disclosure in Advance of the Pretrial Conference
            Date, as it Has Already Told Counsel.................4

        2.    Requests 2, 3, 10, 11, 12: The Government has
            Produced Discoverable Text Messages and Confirmed
            There are No Other Non-Logistical Text Messages......5

        3.    The Agent's Personal Phones Do Not Contain
            Discoverable Messages ..............................7

        4.    Requests 5-6: The Government Has and Will Produce
            Relevant Written Agency Policies....................8

        5.    Other Requests......................................9

IV.   CONCLUSION.................................................11

**Table of Authorities**

18 U.S.C. § 3500 ............................................... 6

*Brady v. Maryland,*
   373 U.S. 83 (1963) ......................................... 6

Federal Rule of Criminal Procedure Rule 16 ............ 6, 13, 14, 15

*United States v. Acosta-Sierra,*
   690 F.3d 1111 (9th Cir. 2012) ............................. 13

*United States v. Agurs,*
   427 U.S. 97 (1976) ......................................... 6

*United States v. Bagley,*
   473 U.S. 667 (1985) ........................................ 6

*United States v. Bernal-Sanchez, No. 21-50276,*
   2023 WL 7179469 (9th Cir. Nov. 1, 2023) ................... 8

*United States v. Brown,*
   728 F. App'x 614 (9th Cir. 2018) .......................... 8

*United States v. Coppa,*
   267 F.3d 132 (2d Cir. 2001) ............................... 8

*United States v. Fernandez,*
   231 F.3d 1240 (9th Cir. 2000) .................... 11, 8, 11, 12

*United States v. Henthorn,*
   931 F.2d 29 (9th Cir. 1990) ............................... 8

*United States v. Murray, No. 3:18-CR-30018-MGM-1,*
   2019 WL 1993785 (D. Mass. May 6, 2019) ................... 14

*United States v. Nixon,*
   418 U.S. 683 (1974) ........................................ 8

**I.    INTRODUCTION AND BACKGROUND**

Defendant has moved to compel discovery even though the government has complied with its discovery obligations in this matter and will continue to do so. Because defendant's motion to compel is premature and the requests in it are either moot or improper, the motion should be denied.

On April 6, 2026, the government produced discovery containing screenshots and videos depicting text and other messages from CBP officers N. Jimenez, S. Cosey, and HSI Special Agent Mejia. In doing so, the government informed defendant that there were no discoverable messages for deportation officer E. Ortiz. In response, defendant raised a series of additional follow-up discovery requests and requested a response within 48 hours. The government replied and indicated it would provide a substantive response later in the week. Rather than further responding or allowing the meet-and-confer process to play out, the defense filed the instant motion to compel.

Defendant's motion is unnecessary and premature. Even prior to the motion's filing, the government represented to the defense that it will disclose any Henthorn information in advance of the pretrial conference, and expects to do so later this month. The government will agree to produce certain agency materials. And the government has already produced discoverable text messages that exist in this case and confirmed there are no further discoverable messages. Furthermore, the government has also recently made an additional production of recently received interagency communications and other documents.

The government objects to defendant's duplicative, cumulative, and overbroad request for metadata of messages when defendant is

already in possession of dates/times/recipients/senders of messages and has failed to identify any specific document for which such metadata is needed. The government further objects to the extent defendant's requests seek information subject to internal government processes protected under Rule 16(a)(2).

## II.   LEGAL STANDARD

The law governing criminal discovery arises primarily from three sources. First, Federal Rule of Criminal Procedure Rule 16 establishes guidelines for pretrial production by the government of certain limited materials. Second, under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, the government is obliged to turn over to the defense evidence in its possession that is exculpatory or favorable to the defendant. Finally, under 18 U.S.C. § 3500 (the Jencks Act) and Rule 26.2, both parties must disclose prior statements by witnesses after the witness has testified.  None of these sources authorize "fishing expeditions" or sweeping discovery requests, nor do they require the government to disclose information before it is even within the government's possession, custody or control. See United States v. Bagley, 473 U.S. 667, 675 (1985); see also United States v. Agurs, 427 U.S. 97, 106 (1976) ("there is, of course, no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor").

The government has complied with, and will continue to comply with, each of these discovery obligations.

2

**III. ARGUMENT**

    **A.    This Motion is Premature And Could and Should Have Been Resolved Through the Meet-and-Confer Process**

As will be shown by the government's responses below, this Motion is premature and could have been obviated by a good faith effort by defense counsel to confer with the government.

On Monday, April 6, 2026, after business hours, defense counsel emailed government counsel with a series of additional questions and follow-up discovery requests after the text messages were produced. Defense counsel requested an immediate response 48 hours later on April 8, 2026. On April 8, 2026, government counsel responded stating that he would get back to counsel later in the week, an email which defense counsel did not provide to the Court. See Exhibit A. By this point, the government had already begun to prepare a response that would have addressed the issues raised in this Motion and would have further narrowed any remaining issues in dispute for an appropriate motion to compel. Rather than wait for the government's response, defense counsel proceeded to file the Motion without further notice to the government and without seeking to meet and confer on any hearing date or briefing schedule.[1] Moving to compel, without waiting to hear the government's response, is an inefficient and an ineffective use of both the Court's time and the parties' time. The government remains committed to clear communication and is always open to meeting and conferring in good faith with the defense on issues in this matter.

---

[1] Counsel has also repeatedly declined the government's invitation to meet and confer on discovery matters by phone and/or rescheduled and cancelled such meetings. See Dkt. 53-5 at 2.

3

**B.    Defendant's Requests are  Moot, Premature, or Improper**

1.    Request 1: The Government will Make its Henthorn Disclosure in Advance of the Pretrial Conference Date, as it Has Already Told Counsel

*1. the personnel files of all officers or agents involved in this case and anticipated to testify, pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1990), which requires, upon request, that the government inspect the personnel files of its law enforcement officer witnesses and turn over impeachment material*

The government has not yet finalized its testifying-witness list and is aware of no obligation to produce Henthorn materials to defense at this stage of the case. See United States v. Bernal-Sanchez, No. 21-50276, 2023 WL 7179469, at *2 (9th Cir. Nov. 1, 2023) (unpublished) (the government has "no obligation" to produce personnel files for those that did not "ultimately testify at trial"); see also United States v. Brown, 728 F. App'x 614, 618 (9th Cir. 2018) (unpublished) (no error in denying a "motion for discovery regarding a non-testifying officer's personnel file" because "such discovery is not required"); United States v. Henthorn, 931 F.2d 29, 31 n.2 (9th Cir. 1990). Impeachment or Brady/Giglio evidence must be turned over in time for use at trial.  United States v. Nixon, 418 U.S. 683, 701 (1974) ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial."); United States v. Coppa, 267 F.3d 132, 136, 146 (2d Cir. 2001) ("As a general rule, Brady and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant."); United States v. Fernandez, 231 F.3d 1240, 1248 n.5 (9th Cir. 2000) ("Brady merely requires the government to turn over the evidence in time for it to be of use at trial." (emphasis in original)).

4

Nonetheless, on a phone call with defense counsel, the government agreed that it would make its Henthorn disclosure in advance of the pretrial conference which is currently scheduled for June 4, 2026. The government is finalizing its witness list, is conducting reviews, and expects to provide its disclosure later this month. Defendant's motion to compel is unnecessary and cumulative of the actions the government has already stated it will be taking.

2.    Requests 2, 3, 10, 11, 12: The Government has Produced Discoverable Text Messages and Confirmed There are No Other Non-Logistical Text Messages

*2. all communications, including but not limited to text messages and e-mails, by any officer, agent, or other government official, relating to this incident. The government has produced a small amount of discovery responsive to this request, but it has failed to produce the entirety of the responsive discovery and, notably, failed to produce immigration officer Ortiz's text messages;*
*3.  Any written group communications (including text messages and similar communications), operations directives, or disseminated memoranda regarding HSI/CBP/ICE/ERO operations in the City of Ontario and in San Bernardino County on October 28, 2025, through November 5, 2025;*
*4. All communications conducted on both government and personal phones in the possession by all agents involved in the investigation related to the incident;*

The government has produced all discoverable text messages it is aware of in this case.[2] On April 6, 2026, case agent E. Mejia met with CBP officers S. Cosey and N. Jimenez at the ICE Field Office in San Bernardino, California. (Decl. of Elisha Mejia ("Mejia Decl.") ¶ 5.) He recorded videos of those messages, which involve a group text message thread with other officers that he was also a part of, including officers S. Cosey and N. Jimenez. (Id. ¶¶ 6-7.) In addition to the text thread, agent Mejia also produced a chain of messages from the messaging application Signal in which he and other HSI

---

[2] The government has not produced logistical-type messages.

investigators discussed the incident. Screenshots of the videos and the videos of the messages were provided to counsel on April 6, 2026. (Mejia Decl. ¶ 8). The government is not aware of other discoverable messages that exist about the incident. (See Mejia Decl. ¶ 12.)

    *a. Agent Mejia Confirmed that Officer Ortiz Did Not Have Any Messages About the Incident*

* 11. Any and all correspondence related to the absence or non-existence of Officer Ortiz's communications related to the incident."*
* 12. The steps the government took or plans to take to confirm that Officer Ortiz does not have any communications related to the incident*

As defense counsel would have learned had it permitted the government an opportunity to respond, agent Mejia inspected Officer Ortiz's government phone in person to confirm that he had no such messages. (Mejia Decl. ¶ 10-11.) Given that the meeting took place in person, there is no correspondence on this issue.

Defense counsel further requests in its motion that the government "conduct reasonable inquiries of immigration officer Ortiz." (Mot. at 18.) It has already done so. On February 10, 2026, the same day that videos of the other text messages were taken of Officer S. Cosey and N. Jimenez's phones, agent Elisha Mejia also met with Officer Ortiz in person and reviewed his device and text messages. (Mejia Decl. ¶ 10.) Agent Mejia first verbally confirmed with Officer Ortiz that he had no messages. (Id.). Agent Mejia then performed a general review of the text messages in Officer Ortiz's government phone, searched specifically for the name Jimenez, and in particular reviewed all messages from October 30 and 31, and did not locate any text messages about the incident or Jimenez. (See id. ¶ 10). This is not particularly surprising given that Officer Ortiz was not part of the group text thread that officers S. Cosey, N. Jimenez,

and Agent Mejia were a part of, and because Officer Ortiz did not create a group text for the operation he led on October 30, 2025. (Id. ¶ 10.) Agent Mejia also confirmed with Officer Ortiz that he had not deleted messages on his government phone and that he had no such practice of doing so. (Id. ¶ 11.)

It is also not "incredulous" (Mot. at 7) or surprising that an officer involved in a shooting would have no messages about the incident. An officer who has had to use force in his job is likely to be cautious with future communications.

Contrary to the defense's insinuation,[3] the government is not hiding Ortiz's text messages.[4]

> 3.     The Agent's Personal Phones Do Not Contain Discoverable Messages

As the government planned to tell the defense had it been given sufficient time for the government to respond, the government is not aware of any messages on personal phones related to the incident or JIMENEZ. (See Mejia Decl. ¶ 12; Decl. of Estevan Banuelos ("Banuelos Decl.") ¶ 6.) Agents Mejia and Banuelos have contacted the agents in this matter and confirmed that all agents who witnessed the incident or were involved with the investigation do not have such messages.

---

[3] For example, it is rank speculation that "it cannot be that other involved immigration officers have responsive communications, including text messages, but the shooter, immigration officer Ortiz, has none." (Mot. at 7.) Similarly so as to the statement that "To accept the government's incredulous position would mean immigration officer Ortiz did not send a single text message to a colleague after he shot Mr. Jimenez. (Id.) That simply cannot be true." (Mot. at 7.)

[4] Defense counsel is also incorrect that the "only evidence of the alleged assault" is the officer statements. (Mot. at 14.) The court has designated two material witnesses, Chery Marcelo Lopez Rios and Ada Marling Martinez Morales, as material witnesses in this case. By definition, they are material witnesses because they also witnessed the conduct at issue in this case. A third witness, Jonathan Godinez, also witnessed the events from the Honda accord. Two other non-officer witnesses also witnessed the incident.

Id. This intrusive and overbroad request also does not reflect the practical reality that the federal agents do not generally discuss such issues on personal phones.

        4.    Requests 5-6: The Government Has and Will Produce Relevant Written Agency Policies

> 5. A copy of the current HSI/CBP/ICE/ERO employee manual(s) to include any manuals regarding the following topics: use of force, and effecting warrants and arrests;
> 6. All discovery pertaining to the HSI/CBP/ICE/ERO policies regarding the use of government vehicles in arrest matters and effectuating arrests;

Contrary to the defense's accusation, the government has not "refused" to produce all agency policies and directives[5] Defense counsel never raised this issue for further discussion in any meet and confer or asked the government specifically for a position on this issue.[6]

The government has now produced use of force policies from DHS, CBP, and ICE-ERO. The government is also coordinating with ICE-ERO to determine what further documents, such as arrest policies, may be discoverable, including what may be produced (and with what redactions.)

---

[5] The government objects to the extent Defense is requesting all manuals that a given agency possesses. For example, ICE's HR manual is not relevant to this matter. The government construes Defendant to be asking for applicable use of force and related policies.

[6] While the government does not oppose production of these materials, it contests defendant's blatantly incorrect legal and factual framing of excessive force as applied to this action. Officer N. Jimenez is the victim of this case who was assaulted when Defendant rapidly reversed his vehicle towards her and the nearby Honda Accord with three witnesses in that vehicle. There are no facts whatsoever showing that at any point Officer N. Jimenez used any "excessive force" towards defendant – and to suggest so blatantly twists the facts of the case. Thus, defendant's theory has no bearing the elements of JIMENEZ's assault on officer N. Jimenez. All the more so given that JIMENEZ is the attacker in the incident. "[A]n individual who is the attacker cannot make out a claim of [excessive force] as a justification for an assault." United States v. Acosta-Sierra, 690 F.3d 1111, 1126 (9th Cir. 2012).

5.    Other Requests

*4. Information regarding any oral directives disseminated regarding HSI/CBP/ICE/ERO operations in the City of Ontario and in San Bernardino County on October 28, 2025, through November 5, 2025;*

The government is not aware of further discoverable information for this request.

*7. All written and oral communications between the San Bernardino Sheriff's Department and any responding Ontario City Police Officers and HSI/CBP/ICE/ERO in advance, during, and after Mr. Carlos Jimenez October 30, 2025, arrest.*

The government produced discoverable material in its first production. *See, e.g.,* USAO_00000558.

*8. All interagency emails, correspondence, communications, reports, or memoranda relating to Mr. Carlos [Jimenez] or the incident regarding Mr. Carlos [Jimenez];*

The government has and will produce discoverable material under Rule 16.[7] In addition, the government recently received additional case files , including a recent export of FBI's Sentinel evidence system and a recently issued report on the incident, which has been produced.

*9. We request a list of all HSI, EVRO, and USCBP agents involved in the investigation (e.g. USAO_752 re: FBI agents).*

The government *already* produced this requested list. This is available at USAO_00000449, produced in the initial discovery production in December.[8]

---

[7] The government has not included logistical emails.

[8] The government presumes that the request for "EVRO" refers to Enforcement and Removal Operations ("ERO").

9

*13. The steps the government took to preserve any and all communications between all involved officers, agents, or witnesses in the case;*
*14. All metadata for both the government and personal phones for all agents involved in the investigation; and*
*15. The steps the government took to preserve all correspondence and related metadata;*

As set forth above, the government has produced the discovery file in this case, which contains reports summarizing interviews, recordings (when available), photographs, and videos/screenshots of messages on the incident, including in the recent production. Moreover, these requests also seek information about internal government processes that are not subject to disclosure under Rule 16(a)(2).

Defense counsel's request for metadata is overbroad, unduly burdensome, and cumulative of information that defense counsel has been provided. For example, senders, recipients, dates, and times appear in the produced videos/screenshots of the produced messages. Defense counsel has not identified with specificity any particular piece of metadata for any specific document that it thinks is relevant or would like the government to further look into or articulated how or why that metadata is relevant or disclosable material. Absent any such specificity for such a burdensome and duplicative request, the request for metadata is overbroad, unfocused, and is not warranted. See, e.g., United States v. Murray, No. 3:18-CR-30018-MGM-1, 2019 WL 1993785, at *7 (D. Mass. May 6, 2019) (unreported) (denying Rule 17(c) request for metadata where "[t]he prosecutor represented" that messages contained the "sender and recipient, the contents of the messages, and their dates and times" and defendant failed to demonstrate a "sufficient likelihood"

10

that the associated metadata was "relevant to the offenses charged in the indictment.") The government remains open to meeting and conferring with defense counsel if there is a specific request for a specific document.

> 16. *Any information regarding the lack of recording of Officer Ortiz's interview.*

Again, had defense counsel continued to engage in the meet-and-confer process, counsel would have learned that Officer Ortiz's interview was led by the FBI, rather than HSI. FBI has no requirement that its agents always record interviews and FBI SA Banuelos's general practice is not to record interviews. (Banuelos Decl. ¶ 7.) Indeed, Ortiz was not the only interview led by FBI that was not recorded in this case. For example, witnesses Manuel Villareal and Beatrice Morales were also interviewed by FBI, but their statements were not recorded. See, e.g., USAO_00000646. In this matter, numerous interview recordings were made and subsequently produced because many of the HSI agents who were involved in some interviews did have a practice of recording interviews. Neither Officer Ortiz nor his counsel made any request that the interview not be recorded. (Banuelos Decl. ¶ 8; Mejia Decl. ¶ 21.)

Put another way, a lack of consistent practice on interview recording does not demonstrate anything malicious. Rather, it shows that different agents have different practices. That is all.

## IV.    CONCLUSION

For the foregoing reasons, defendant's motion should be denied, including because almost all of the requests made are moot.

11

# Exhibit A

| From: | Chang, Stephen (USACAC) |
|---|---|
| To: | Ayah Sarsour |
| Cc: | Chad Pennington; Nicole Arias; Kanow, Mark (USACAC) |
| Subject: | RE: US v. Jimenez, Discovery Demand - Sixth Request |
| Date: | Wednesday, April 8, 2026 4:58:54 PM |
| Attachments: | image001.jpg |

Ayah – I will get back to you later this week.

Best,

---

**From:** Ayah Sarsour <Ayah_Sarsour@fd.org>
**Sent:** Monday, April 6, 2026 5:57 PM
**To:** Chang, Stephen (USACAC) <Stephen.Chang@usdoj.gov>
**Cc:** Chad Pennington <Chad_Pennington@fd.org>; Nicole Arias <Nicole_Arias@fd.org>; Kanow, Mark (USACAC) <Mark.Kanow@usdoj.gov>
**Subject:** [EXTERNAL] RE: US v. Jimenez, Discovery Demand - Sixth Request

AUSA Chang,

Thank you for providing us some messages and correspondence between some of the agents related to this incident.  Based on our review, we are requesting the following additional and relevant items related to our original discovery requests and your production of the text messages between select agents:

1. All interagency emails, correspondence, communications, reports, or memoranda relating to Mr. Carlos Jiminez or the incident regarding Mr. Carlos Jiminez.
2. We request a list of all HSI, EVRO, and USCBP agents involved in the investigation (e.g. USAO_752 re: FBI agents).
3. We request all communications conducted on both government and personal phones in the possession by all agents involved in the investigation.
4. Any and all correspondence related to the absence or non-existence of Ortiz communications related to the incident; and
5. What steps has the Government taken or plan to take to confirm that Officer Ortiz does not have any communications related to the incident?
6. What steps did the government take to preserve any and all communications between all involved officers, agents, or witnesses in the case?
7. We request all meta data for both the government and personal phones for all agents involved in the investigation.
8. What steps has the government taken to preserve all correspondence and related meta data.

9. Regarding the lack of recording of Ortiz's interview, why is there no recording (when the other related officer interviews were recorded)? Was there a specific request by Officer Ortiz not to record the interview?  Please explain the circumstances resulting in the interview not being recorded.

We kindly request this material **no later than April 8, 2026, by 5:00pm**. We will be filing a motion to compel otherwise.

Thank you,
Ayah



**Ayah A. Sarsour**
**Deputy Federal Public Defender**
**Office of the Federal Public Defender**
**Central District of California**
3801 University Avenue, Suite 700 | Riverside, CA 92501
O: 951.276.6367 | F: 951.276.6368

---

**From:** Chang, Stephen (USACAC) <Stephen.Chang@usdoj.gov>
**Sent:** Monday, April 6, 2026 12:44 PM
**To:** Ayah Sarsour <Ayah_Sarsour@fd.org>
**Cc:** Chad Pennington <Chad_Pennington@fd.org>; Nicole Arias <Nicole_Arias@fd.org>; Kanow, Mark (USACAC) <Mark.Kanow@usdoj.gov>
**Subject:** RE: US v. Jimenez, Discovery Demand - Sixth Request

Hi Ayah,

Please see attached production letter re: messages for Mejia, Cosey, and N. Jimenez. DO Ortiz did not have messages. Files have been uploaded to USAFx - Nicole – if any issues with USAFx let me know!

In terms of Henthorn, I have already told Chad we should be able to disclose in advance of the new pretrial conference date. We will do so once we have considered and have been able to finalize our witness list.

Best,

---

**From:** Ayah Sarsour <Ayah_Sarsour@fd.org>
**Sent:** Thursday, March 26, 2026 4:46 PM
**To:** Chang, Stephen (USACAC) <Stephen.Chang@usdoj.gov>
**Cc:** Chad Pennington <Chad_Pennington@fd.org>; Nicole Arias <Nicole_Arias@fd.org>
**Subject:** [EXTERNAL] US v. Jimenez, Discovery Demand - Sixth Request

AUSA Chang,

We are renewing our discovery demand for the following items, which we believe are, in part, outstanding:

1. All interagency emails, correspondence, communications, reports, or memoranda relating to Mr. Carlos Jiminez or the incident regarding Mr. Carlos Jiminez. (See first and second supplemental Discovery Request).

2. Personnel files of all government agents and employees whom the government intends to rely on for testimony at a hearing or a trial. *United States v. Henthorn*, 931 F.2d 29, 30-31 (9th Cir. 1991); *see also* Fed. R. Evid. 608(b). This request specifically covers any *Henthorn* material in the agents or employees' prior employment, if any. Further, I request that you personally review all such personnel files for discoverable Brady materials. *United States v. Cadet,* 727 F.2d 1453, 1467-68 (9th Cir. 1984).  Please refer to the third supplemental discovery demand (attached here again).

3. Our understanding is that the Government has refused to produce any of the requested information in the Fourth Supplemental Discovery request (attached here again).  Please confirm or deny.

I have reattached all four discovery requests and respectfully ask that you comply with them, as well as your continuing discovery obligations.

We kindly request this material no later than **April 3, 2026, by 5:00pm**. We will likely be filing a motion to compel otherwise.

Thank you,
Ayah



**Ayah A. Sarsour**
**Deputy Federal Public Defender**
**Office of the Federal Public Defender**
**Central District of California**
3801 University Avenue, Suite 700 | Riverside, CA 92501
O: 951.276.6367 | F: 951.276.6368