CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
CHAD PENNINGTON (Bar No. 354831)
(Email: Chad_Pennington@fd.org)
AYAH A. SARSOUR (Bar No. 340280)
(Email: Ayah_Sarsour@fd.org)
Deputy Federal Public Defender
3801 University Avenue, Suite 700
Riverside, California 92501
Telephone: (951) 276-6346
Facsimile: (951) 276-6368

Attorneys for Defendant
CARLOS JIMENEZ

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> CARLOS JIMENEZ, <br><br> Defendant. | Case No. 5:25-cr-00366-KK <br><br> **REPLY IN SUPPORT OF THE MOTION TO COMPEL GOVERNMENT WITNESS PERSONNEL FILES AND COMMUNICATION** <br><br> Status Conference: June 4, 2026, at 1:30 p.m. <br><br> Trial Date: June 22, 2026, at 8:30 a.m. |

Defendant Carlos Jimenez, by and through counsel of record, Deputy Federal Public Defenders, Ayah Sarsour and Chad Penington, hereby files this reply in support of his motion to compel the government's disclosure of personnel records for the immigration officers and agents involved in this matter, the exchanged communications between the immigration enforcement officers and agents regarding the charged offense, and all policies and directives relevant to this incident. Mr. Jimenez moves for relief under Federal Rules of Criminal Procedure 16 and 5(f), this Court's standing criminal order, and *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny.

Mr. Jimenez asks that the Court order the government's production of the requested material or a government response within seven-days. If the Court is amenable, Mr. Jimenez seeks a hearing on the matter at the Court's earliest convenience given the impending trial date.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: April 20, 2026    By  /s/ *Ayah Sarsour*

AYAH A, SARSOUR
CHAD PENNINGTON
Deputy Federal Public Defender

## I. INTRODUCTION

Precedent is clear: a prosecutor must always err on the side of investigating and disclosing evidence that is potentially favorable to the defense. But rather than taking an appropriately broad view, the government here has apparently refused to investigate this case beyond relying solely on the immigration authorities' accounts. Shirking its *Brady* responsibility, the government's position is that Mr. Jimenez's motion is premature and moot.

Mr. Jimenez first sought the production of all internal agency communications on November 5, 2025, in conjunction with his very first discovery demand. On December 2, 2025, he specifically requested the involved immigration officers' text messages. The government initially refused production, and pursuant to its response, it only began a review of the text messages in February of 2026. It has only recently produced a portion of such responsive text messages. The government's discovery obligations are constitutional and rule-based, and its obligations are not subject to a leisurely conference pace imbuing it with authority to investigate and decide when and what to produce. The government cannot argue prematurity when it refused to produce the texts when requested in December of 2025, and as late as March, continued in its refusal. The defense here rightfully relied on the government's months-long-refusal to produce texts as a basis to request this Court's discovery intervention. The instant motion was filed only *after* numerous discovery requests and demands, and refusals, and with Mr. Jimenez still unable to receive an adequate response from the government, in preparation for trial. The defense will not beg for the requested material in a meet and confer process when it has already made formal demands for the same material, nor when the government bears an affirmative constitutional and rule-based obligation to produce such material in a timely

1

manner so that it may be used not only at trial, but also early enough to allow for the development and investigation of a defense strategy.

This is the government's criminal prosecution. Constitutionally, it is not entitled to withhold responsive discovery until the defense asks for the discovery to its liking and in a conference setting it prefers. The defense has made numerous discovery demands, and the government must produce such material. Indeed, the defense need not make any discovery demand for *Brady* materials, as Mr. Jimenez's *Brady* rights are self-executing and not subject to a discovery request. *See United States v. Agurs*, 427 U.S. 97, 103-104 (1976) (the Supreme Court analyzing three situations in which *Brady* claims might arise and holding that *Brady* applied to exculpatory evidence the government failed to volunteer but was never requested, or only generally requested, by the defense).

The government has not produced any *Henthorn* material and refuses to until it is able to finalize its witness list. As stated in Mr. Jimenez's motion to compel, this is a very narrow reading of its discovery obligations. All associated witnesses are now under subpoena, and the defense demands a thorough review and disclosure of these records. Again, the defense needs the *Henthorn* material far sooner than the government's proposal to investigate the government witnesses.

The government also implausibly argues that it's produced all text messages and communication relevant to the assault incident. The government is wrong and that simply cannot be true. Within its original production, there contains evidence of additional and relevant communications that has not been disclosed. Additionally, it defies all logic and common sense, that the one person who did not have responsive material was the very ICE officer who shot Mr. Jimenez, the same ICE officer who is under investigation for his use of force, and the same and only officer, whose

2

interview was not recorded. This alone justifies Mr. Jimenez's request for the metadata from both ICE officer Ortiz's personal and government phone. Indeed, as noted above, the government, for months, refused to produce any text messages. It did not, assuming its representations are true, inspect for text messages until February of 2026, with production coming almost two months after that. The initial refusal and then subsequent delay support the production of the metadata. There was simply too long of a delay and obfuscation to take the government's assertion on text availability at face value. If there is, in fact, no text messages, the government should have no concern letting the Court and the defense confirm whether its representations are true. The government, here, with the delay, is not entitled to the benefit of the doubt regarding the text messages. Again, it is not credible that the shooter here, officer Ortiz, has no texts of any kind related to the incident at issue. The metadata is necessary to verify immigration officer Oritz's and the government's unlikely parroted assertion. Thus, the defense requests the metadata from all involved immigration officers' government and personal cellular phones.

Notably, from a discovery management perspective, the government's response reflects its fundamental misunderstanding of federal criminal practice. The defense requested communications on November 5, 2025, and the text messages on December 2, 2025. The government should have produced the text messages requested within a reasonable time thereafter. Instead, the government, as late as early March of 2026, denied it was obligated to produce such discovery. This is the government's prosecution, and the defense will not waste, and indeed cannot waste, time conferring with the government regarding what the government is constitutionally required to produce. That the government ultimately did produce a portion of the requested text messages demonstrates its initial refusal to do so was without

3

merit. If the government delays production, the defense will move for production. The government is attempting to take Mr. Jimenez's liberty after nearly taking his life with an errant gunshot; the defense is not required to wait for protracted conferencing, because it is constitutionally entitled to discovery *without conferencing*. The government's position that the defense here should have waited for conferencing belies not only that the discovery demands raised here came after discovery demands were served on the government, but also, that the government must produce discovery with or without conference. There is no provision in law that allows the government to withhold material discovery in a criminal case subject to a discovery conference format it prefers. The government may prefer rounds of phone calls and meetings after receiving a discovery demand, but the defense cannot expend time meeting about the matters already requested. To illustrate, the defense sought production of government enforcement policies on December 2, 2025. The government, only recently, in mid-April of 2026, produced such policies and only after this motion had been filed. The government's pace is simply too slow.

## II. THIS COURT SHOULD COMPEL *BRADY* AND *HENTHORN* MATERIALS

On November 5, 2025, on November 20, 2025, and yet again on March 26, 2026, defense counsel requested the personnel files of all immigration officers or agents involved in this case and anticipated to testify. On December 2, 2025, defense sought production of all texts. As to *Henthorn*, notwithstanding the Court's standing order, issued on December 12, 2025, and notwithstanding this instant Motion to Compel, the government chooses to delay its production in order for it to finalize its witness list. The defense objects to this extremely narrow approach, especially in a case where the

4

incident was not captured on video and where the government's case is largely reliant on the ICE officers' testimony.

To begin, this requested discovery falls within Rule 16. Rule 16 evidence is material if the requested "item is material to preparing the defense . . . ." Fed. R. Crim. P. 16(a)(1)(E)(iii). Misconduct constitutes material preparation. And evidence of misconduct by a government agent involved in the investigation falls under *Brady*, whether or not the government ultimately calls that agent as a witness. *United States v. Bruce*, 984 F.3d 884, 898 (9th Cir. 2021). Under *Bruce*, the government is plainly required to investigate and disclose evidence of involved officers' misconduct—regardless of whether he or she testifies. Despite the government's narrow view, Mr. Jimenez has subpoenaed all officers involved in this incident for trial. That said, the defense expects the government and requests that this Court order the government to conduct its review of all personnel files within seven days and promptly turn over all responsive material. Trial is scheduled to begin on June 22, 2026, and Mr. Jimenez looks forward to asserting his innocence that day without delay. The government, accordingly, needs to produce now and not near the pretrial conference, information necessary to the preparation of Mr. Jimenez's defense, which the officer personnel files plainly fall within.

The lesson of *Bruce*, therefore, is that prosecutors and courts should think broadly when deciding what counts as "exculpatory" evidence. *Id.* at 865 (emphasizing that the term "exculpatory connotes a broader category of evidence" that includes any evidence that would tend to call the government's case into doubt") (cleaned up). Indeed, both the Ninth Circuit and the Supreme Court have repeatedly exhorted prosecutors to err on the side of disclosing even borderline favorable evidence. *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013) ("It . . . behooves the government to

5

interpret the disclosure requirement broadly…"); *United States v. Price*, 566 F.3d 900, 913 (9th Cir. 2009) ("If doubt exists, it should be resolved in favor of the defendant and full disclosure made…."); *Agurs*, 427 U.S. at 108 ("[T]he prudent prosecutor will resolve doubtful questions in favor of disclosure."). Thus, the defense is requesting production of all *Henthorn* material related to *any* agent of law enforcement officer involved in this incident.

## III. THIS COURT SHOULD COMPEL ALL COMMUNICATIONS BY ANY OFFICER, AGENT, OR OTHER GOVERNMENT OFFICIAL, RELATING TO THIS INCIDENT.

On December 2, 2025, February 18, 2026, March 6, 2026, and March 26, 2026, defense counsel repeatedly requested the officers' and agents' phones be made available for inspection and for disclosure of any and all communications by any officer, agent, or other government official, relating to this incident. As late as March 6, 2026, the government refused production as noted in the defense's Exhibits D and E filed in support of its motion to compel. Yet, the government believes that despite Mr. Jimenez's repeated requests, another meet and confer would have been fruitful and necessary before this motion was filed.

Finally, on April 6, 2026, the government produced messages from immigration officers Mejia, Cosey, and N.J.'s phones. However, the government represented then and continues to represent that immigration



officer Ortiz, the uncontroverted shooter, did not have responsive messages. Again, the government has not been diligent in its investigation of this case. For example, in its initial and extremely late production of the text messages, there are additional communications between N.J. and FBI Special Agent Banuelos, which the government failed to produce.

USAO_00000955

What's more, the immigration officers clearly knew they were communicating on government phones and insinuated that they could carry less professional conversations on a different personal device.




USAO_00000950
USAO_00000951



USAO_00000952

Mr. Jimenez has yet to receive a single message on a personal device, and the government refuses to disclose even the most apparent and relevant communications despite the above messages showing the likelihood of such messages. Indeed, the government's refusal to comply with its well-established obligations, even in the face of such communications, calls into question its overall commitment to its *Brady* obligations. Accordingly, this Court should not limit its order to communications involving ICE Officer Ortiz; instead, it should require the government to investigate and produce evidence of all communications and metadata of both personal and government phones of all involved government officers or agents to confirm the absence of any communications. Moreover, this Court should compel the government to explain any and all steps it took to preserve all correspondence, communications, and related metadata between all involved officers, agents, or witnesses in the case. The defense served this demand on December 2, 2025, and more importantly, the Special Agents advised N.J. to preserve all text messages, but apparently no preservation instruction was

8

conveyed to immigration officer Ortiz, the shooter. With that gap, a review of the metadata is critical. It bears repeating that because the prosecution is uniquely positioned to obtain information known to other agents of the government, *"it may not be excused from disclosing what it does not know but could have learned." Price*, 566 F.3d at 909; *see also Kyles v. Whitley*, 514 U.S. 419, 432, 438 (1995) (the government has an affirmative duty to learn of favorable evidence known to the agents working on the government's behalf, and the government cannot suppress what is known to the agents that it could have obtained through diligent inquiry.).

The government has so far declined to comply with these obligations and argues that Mr. Jimenez's demands are either moot or premature. The government is incorrect. The government's stance leaves Mr. Jimenez in the dark regarding any favorable evidence that an investigation may uncover. To that end, as noted in Mr. Jimenez's motion, the government's discovery challenges in the recent spate of § 111 cases are well documented. So well documented that its request to not produce the metadata is redolent of the very withholding of information and misrepresentations that has characterized the recent § 111 cases. Indeed, as noted in Mr. Jimenez's motion, in *United States v. Martinez*, 25-cr-636, ECF No. 70 (N.D. Ill. 2025), the district court granted the government's dismissal request a mere three days after the second round of text messages had been produced. And in this case, the government has oscillated between stating it need not produce text messages to then producing to what amounted to a clearly deficient amount. *United States v. Quintanilla-Chavez*, 5:25-cr-388, ECF No. 64 at 6 (W.D. Tex. 2025) (dismissing the complaint of a § 111(a) matter based on the sworn affidavit telling a "largely fictional—story" of the assault, including claiming, falsely, that the defendant "fought the law enforcement officers."); *United States v. Briggs*, 25-cr-609, ECF No. 43 at 6 (N.D. Ill. 2025) (emphasis added)

9

(the district court granted the government's dismissal motion noting "the extraordinary judicial determinations that DHS sworn declarations are unreliable, that the candor of its agents is open to question, and that sworn testimony of its CBP chief *contained knowing falsehoods."*). Production of the metadata will assist the defense and the Court resolve the obvious gaps.

Moreover, HSI officer Mejia did not attempt to review immigration officer Oritz's personal cellular phone. In fact, it does not appear that Mejia reviewed immigration officer N.J.'s personal cellular phone or *any* personal cellular phone. *See* ECF No. 58, Ex. B. Instead, Mejia's affidavit relates solely to a review of the government issued phones.  The affidavit states that the immigration officers' were *contacted* regarding their personal cellular phones, but no inspection was conducted. Moreover, the affidavit does not state Mejia has specialized cellular phone extraction or review training. Moreover, again, because the government initially denied a production obligation relating to the text messages, any inspection of government cellular phone of the immigration officers or of their personal devices occurred so late that metadata review is now necessary to determine whether any messaging deleting occurred. Finally, as stated in Mr. Jimenez's motion, FBI and HSI interviewed Ortiz weeks after the incident. *See* Ex. A. During his interview, immigration officer Ortiz indicated that he spoke with other immigration officers about the incident. The defense is entitled to view those communications.

## IV. CONCLUSION

For the foregoing reasons, Mr. Jimenez requests that the Court compel the government to disclose any impeachment material to the defense, produce directly any and all law enforcement communications related to this incident, and produce directly all agency policies and directives relevant to the incident.

10

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  April 20, 2026          By  /s/ *Ayah Sarsour*

AYAH SARSOUR
CHAD PENNINGTON
Deputy Federal Public Defenders

11

## CERTIFICATE OF COMPLIANCE AND DECLARATION

I, Ayah Sarsour, counsel of record for the defendant, certify that this filing complies with the requirements of L.R. 11-6.1 including word count.

I, Ayah Sarsour, counsel of record, further certified under penalty of perjury that the representations in this filing are true and accurate.

1